# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF INDIANA
### HAMMOND DIVISION

NORMA MALDONADO, individually and  )
as parent and next friend of A.M. and T.C., )
minors, and DARIO LEMUS,              )
                            )
       Plaintiffs,           )
                            )
   vs.                    )         2:14CV310-PPS
                            )
CITY OF HAMMOND, INDIANA and   )
TIMOTHY L. KREISCHER,        )
                            )
      Defendants.        )

## OPINION AND ORDER

Norma Maldonado and Dario Lemus allege that their family's mixed-breed 60-pound dog Lilly was shot and killed by Hammond police officer Timothy Kreischer in the presence of two of their minor children. Kreischer had been dispatched to Maldonado's residence to investigate a report of a "loose dog." When he arrived on the scene, Kreischer says that Lilly lunged at him and Kreischer responded by shooting the dog to stave off the attack. Lilly survived the shooting. Count I of the first amended complaint is brought against Officer Kreischer under 42 U.S.C. §1983, and alleges that the shooting amounts to an unreasonable seizure under the Fourth Amendment. Count II against the City of Hammond is also brought under §1983 and is based on the allegation that the City had no policy or training in place on how to handle barking dogs

and further ratified the decision to shoot the dog by failing to train or discipline Officer Kreischer after the shooting.[1]

The matter is now before me on separate motions for summary judgment filed by the defendants. Summary judgment must be granted when "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(a). A party opposing summary judgment may not rely on allegations or denials in his or her own pleading, but rather must "marshal and present the court with the evidence she contends will prove her case." *Goodman v. Nat'l Sec. Agency, Inc.*, 621 F.3d 651, 654 (7th Cir. 2010). Summary judgment "is the put up or shut up moment in a lawsuit, when a party must show what evidence it has that would convince a trier of fact to accept its version of the events." *Springer v. Durflinger*, 518 F.3d 479, 484 (7th Cir. 2008).

Officer Kreischer invokes the doctrine of qualified immunity, which "protects government officials 'from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'" *Pearson v. Callahan*, 555 U.S. 223, 231 (2009), quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). The doctrine balances two important interests – "the need to hold public officials accountable when they exercise power irresponsibly and the

---

[1] In support of their summary judgment motions, both defendants offer argument concerning claims asserted under state law tort principles. [DE 53 at 12*ff*; DE 55 at 12*ff*.] But the first amended complaint does not contain any language that could reasonably be construed as asserting claims under state law, so no state law claims are at issue in my view.

need to shield officials from harassment, distraction, and liability when they perform their duties reasonably." *Pearson*, 555 U.S. at 231. The two-pronged qualified immunity analysis asks whether on the plaintiffs' version of the facts a constitutional right would have been violated, and whether the right was clearly established. *Viilo v. Eyre*, 547 F.3d 707 at 709-10 (7th Cir. 2008).

Plaintiffs' theory of their case against Kreischer is that the shooting of their family pet was an unreasonable seizure under the Fourth Amendment. [DE 18 at ¶27.] The Seventh Circuit agrees that "[t]he killing of a companion dog constitutes a 'seizure' within the meaning of the Fourth Amendment." *Saathoff. v. Davis*, 826 F.3d 925, 932 (2016). As a result, "Officer [Kreischer's] actions were constitutional only if reasonable." *Id*. at 933. The parties agree that Kreischer's liability turns on the objective reasonableness of his conduct in shooting Lilly. [DE 53 at 4; DE 62 at 3.] In *Viilo*, the Seventh Circuit made plain that "the use of deadly force against a household pet is reasonable only if the pet poses an immediate danger and the use of force is unavoidable." *Viilo*, 547 F.3d at 710.

Here's what the evidence establishes. Ashley Marie Balsan called 911 after an encounter with Lilly in which Balsan says the dog "galloped" up to her, "growling and barking," as she was walking by the house on the sidewalk. [DE 52-1 at 5-6.] Balsan ran into the middle of the street "screaming bloody murder" because she feared the dog was going to bite her leg. [*Id*.] She testified that Lilly came within a foot of her, and clearly had gone past the white flag posted in the yard delineating the boundaries of the

invisible fence announced on a prominently posted yard sign. [*Id*. at 7-8; DE 63-3 at 4-5.]
After Balsan fled screaming, Lilly retreated into the yard and didn't follow Balsan into
the street. [*Id*.] Balsan told the 911 dispatcher that there was a loose dog at the plaintiffs'
address and that the police needed to respond because she had been afraid the dog was
going to bite her leg off. [DE 52-1 at 11.]

Officer Kreischer responded to the 911 call reporting an unfenced dog whose
owners were relying on a "shock collar to take the place of a fence." [DE 52-2 at 2.] He
testified that he arrived to find the front door of the house standing open, which led him
to believe the dog who'd been reported was unrestrained. [*Id*. at 4.] He saw Dario
Lemus in the backyard and motioned to him to come to the front, where Kreischer was
then standing in the driveway. [*Id*. at 5-6.] Almost immediately thereafter, Lilly
sprinted from behind the house directly toward Kreischer, who retreated to the front
hoping that the invisible fence would stop her charge. [*Id*. at 6.]

Kreischer testified that he reached the grass parkway between the sidewalk and
the street, and realized that the invisible fence had not stopped the dog. [*Id*. at 8.] Lilly
"lunged" at Kreischer, showing her teeth, and Kreischer fired his handgun when Lilly
was within a foot of him. [*Id*.] Describing what he'd called her "lunge," Kreischer
testified: "It propelled itself from his back feet, lifting its front feet off the ground. Its
mouth was open. It bared its teeth and it was propelling itself toward my right hip."
[*Id*. at 9.] Kreischer testified that after the shooting, Dario Lemus arrived in the front
yard, and that Lemus was the first person Kreischer saw in the yard. [*Id*. at 12.]

Kreischer didn't see any children until after Lemus came to the front after the shooting. [*Id*.] Lemus testified that he did not see the encounter between Lilly and Kreischer, but only heard the gunshot. [DE 63-4 at 5.] Plaintiff Maldonado was also in the back yard and did not see the shooting either. [*Id*. at 6.] Lemus testified that the invisible fence was on and operable, but obviously it wasn't particularly effective in restraining Lilly because she repeatedly crossed over the invisible fence line that day. In any event, we know that the fence was operable because, according to Lemus, Lilly was still being shocked by the collar in the car en route to the veterinarian, prompting him to stop and remove it. [*Id*. at 7.]

T.C. is one of the minors for whom Maldonado acts as next friend in this case. T.C. testified that at the time of the shooting he was standing next to the fence along the driveway, near the point where the driveway passes in front of the house. [DE 63-1 at 4.] According to T.C., Lilly was shot at the inner corner of the front yard, just where it meets the driveway at the corner of the house. [*Id*. at 4-5.] He claims that "Lilly came barking" so he was going to try to calm her down by petting her, but Kreischer shot the dog first. [*Id*. at 5-6.] In the deposition testimony provided to the court, T.C. offers no testimony as to where Kreischer was situated at the time of the shooting.

The other minor for whom Maldonado is next friend is A.M. Only one page of A.M.'s deposition testimony is submitted with respect to the summary judgment motions, and that testimony does not indicate where A.M. was in relation to the shooting, and whether or not she witnessed it. In the deposition excerpt provided, A.M.

testifies that at the time of the shooting, she was leaning against a black car, but not where the car was located or whether from that vantage point she could see the encounter between Kreischer and the dog. [DE 63-2 at 3.]

Officer Kreischer argues that the "undisputed physical evidence" establishes that Lilly had left the yard and was shot in the grassy parkway between the sidewalk and the street. [DE 53 at 10.] This conclusion is based on the locations of the spent bullet found in the parkway and the bullet casing found in the driveway's apron (both between the sidewalk and the street), the blood spatter on the sidewalk moving from west to east toward the house (consistent with Lilly's retreat as testified to by Kreischer), and the analysis of the bullet's trajectory determined from the dog's wound and the location of the bullet in the grass. [*Id.* at 10-12.] Forensic engineer and ballistics expert John Nixon attests to this analysis by affidavit. [DE 52-8.] Plaintiffs mount no challenge to any of that evidence directly, but the testimony of T.C. offers a contrary account of Lilly's location at the time of the shooting (but not Kreischer's). As a result, the record the parties have assembled for the summary judgment analysis discloses a genuine dispute only as to where the dog was when she was shot.

Ultimately, that dispute is not material and does not preclude summary judgment in Kreischer's favor. "Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." *Abrams v. Walker*, 307 F.3d 650, 653 (7th Cir. 2002), quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). None of the plaintiffs' evidence challenges or rebuts Kreischer's

testimony that Lilly ran toward him barking and growling, and that she lunged at Kreischer with her teeth bared. That undisputed scenario establishes that Kreischer's response by shooting the dog was objectively reasonable, whether it occurred in the front yard at the corner of the house or in the parkway between the sidewalk and the street. This is precisely the conduct declared reasonable in *Viilo*, where the pet poses an immediate danger and the use of force is unavoidable. *Viilo*, 547 F.3d at 710.

There is a hint at another claim in the complaint and that is that the minors were dangerously close to Kreischer at the time he fired his weapon. The problem with this theory is that there is no evidence to support the claim. Plaintiffs argue in their opposition brief that Kreischer "was on the sidewalk west of the Plaintiff's house when he discharged his weapon and did not shoot Lilly in close range." [DE 62 at 3-4.] But plaintiffs cite to no evidence to support this assertion as to Kreischer's location or his proximity to Lilly. Plaintiffs' Statement of Genuine Disputes is tellingly scant, and does not even allege (much less cite evidence to support) where Kreischer stood when he discharged his weapon, or that the trajectory of the shot unreasonably endangered T.C. or others. [DE 63.] The undisputed evidence is that Kreischer discharged a single shot in a downward motion at a large dog who had approached at speed and was within a foot of him, as the dog lunged at Kreischer apparently with the intention to bite him. The decision to fire his gun on these facts is objectively reasonable as a matter of law, and plaintiffs offer no evidence to support any assertion that T.C. or anyone else was imperiled in any way.

On this analysis, I readily conclude that Officer Kreischer is entitled to summary judgment, because the plaintiffs are unable to support a version of the facts on which the Fourth Amendment was violated. At this summary judgment stage, with all the evidence on the table, the line between qualified immunity and summary judgment on the merits becomes blurred, but on either analysis, Kreischer avoids liability in this case. *See Novoselsky v. Brown*, 822 F.3d 342, 357 (7th Cir. 2016) (where plaintiff could not demonstrate a violation of a clearly established constitutional right, the defendant official was entitled to summary judgment both on the merits and based on qualified immunity). Kreischer's motion for summary judgment will be granted.

The City correctly argues that, in this case, "[a]bsent liability on the part of Officer Kreischer, it necessarily follows that no liability may be imputed to the City of Hammond." [DE 55 at 3.] "[T]he premise behind a §1983 action against a government body is 'the allegation that official policy is responsible for the deprivation of rights.'" *Thomas v. Cook County Sheriff's Dept.*, 604 F.3d 293, 306 (7th Cir. 2009), quoting *Monell v. Dep't of Social Services of New York*, 436 U.S. 658, 690 (1978). For there to be municipal liability for an unconstitutional act, there must have been an unconstitutional act. Where plaintiffs' evidence cannot show that there *was* a deprivation of rights, there can be no municipal liability, which would necessitate an inconsistent verdict. *Thomas*, 604 F.3d at 305, citing *Speer v. City of Wynne, Arkansas*, 276 F.3d 980, 986 (8th Cir. 2002) ("We do not suggest that municipal liability can be sustained where there has been no violation of the plaintiff's constitutional rights as a result of action by the municipality's officials or

employees.")  As in *Novoselsky,* because I hold that Kreischer did not violate plaintiffs'

constitutional rights, it follows that plaintiffs "cannot avoid summary judgment on

[their] *Monell* claim" against the municipality.  *Novoselsky*, 822 F.3d at 357.  The City of

Hammond's motion for summary judgment will be granted.

In sum, summary judgment in favor of Officer Kreischer and the City of

Hammond is appropriate because Officer Kreischer has presented evidence that he was

being attacked by Lilly when he made the decision to shoot her, and that evidence has

not been rebutted by the plaintiffs. Thus, the plaintiffs have failed "to make a showing

sufficient to establish the existence of an element essential to [their] case, and on which

that party will bear the burden of proof at trial."  *Celotex Corp. v. Catrett*, 477 U.S. 317,

322-23 (1986).

**ACCORDINGLY:**

Defendant Timothy L. Kreischer's motion for summary judgment [DE 51] is

GRANTED.

Defendant City of Hammond, Indiana's motion for summary judgment [DE 54] is

GRANTED.

The Clerk shall enter judgment in accordance with this opinion, and this matter

will be CLOSED.

**SO ORDERED**.

ENTERED:  October 18, 2016

/s/ Philip P. Simon
**PHILIP P. SIMON, CHIEF JUDGE**